UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title VI |
| PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY, | Case No. 21-01492 (LTS) |
| Applicant. | |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
APPROVING QUALIFYING MODIFICATION FOR THE
PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
PURSUANT TO SECTION 601(M)(1)(D) OF THE PUERTO RICO
OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT

The Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor (the "Oversight Board") for the Puerto Rico Infrastructure Financing Authority, as Issuer ("PRIFA"), having:[1]

a.  commenced, on October 5, 2021, a solicitation of votes to accept or reject the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Infrastructure Financing Authority* attached hereto as **Exhibit A** (the "Qualifying Modification") pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") Section 601 (the "Solicitation") by delivering (i) a copy of the Issuer's Solicitation Statement, dated October 5, 2021 (the "Solicitation Statement"), and (ii) one or more ballots, as applicable (collectively, the "Ballots", together with the Issuer's Solicitation Statement, the "Solicitation Package"), to all Eligible Voters (as defined herein), as evidenced by, among other things, the *Affidavit of Solicitation* [ECF No. 53; FOMB Ex. 17 at ECF No. 64-17] (the "Solicitation Affidavit") filed by Prime Clerk, LLC (the "Information Agent") on November 5, 2021;

b.  filed, on October 8, 2021 (the "Title VI Application Date"), the *Application of the Puerto Rico Infrastructure Financing Authority, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PRIFA Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability*

---

[1]  Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Approval Order" or this "Order") have the meanings ascribed to them in the Qualifying Modification, and if not therein defined, in Title VI of PROMESA.

*Act* [ECF No. 1] (the "Approval Application"), thereby commencing the above-captioned action pursuant to Title VI of PROMESA (the "Title VI Case"), pursuant to District of Puerto Rico Local Civil Rule 3.1;

c.     filed, on October 8, 2021, the *Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Infrastructure Financing Authority, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PRIFA Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* [ECF No. 2] (the "Rosen Decl.");

d.     caused notice (the "Hearing Notice") of the Approval Procedures Order, including of the Approval Hearing (each as defined below), to be served on (i) all holders of the right to vote to accept or reject the Qualifying Modification pursuant to PROMESA Section 601(j), (ii) the indenture trustee for the Outstanding Bonds, and (iii) AAFAF, as evidenced by the Affidavit of Service [ECF No. 41; FOMB Ex. 15 at ECF No. 64-15] (the "Hearing Affidavit") filed by the Information Agent on October 27, 2021 and the Solicitation Affidavit, and supplemented by the *Certification of Brian S. Rosen Regarding Service of the Approval Hearing Notice* [ECF No. 58; FOMB Ex. 16 at ECF No. 64-16] (the "Hearing Notice Certification");

e.     filed, on November 5, 2021, the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast to Accept or Reject Qualifying Modification Pursuant to PROMESA Title VI For the Puerto Rico Infrastructure Financing Authority* [ECF No. 56; FOMB Ex. 18 at ECF No. 64-18] (the "Voting Certification"), indicating that (i) Eligible Voters holding over 50% of the aggregate Outstanding Principal amount of Outstanding Bonds in the Pool voted to accept the Qualifying Modification; and (ii) Eligible Voters holding over 66 2/3% of the Outstanding Principal amount of Outstanding Bonds in the Pool that voted in the Solicitation voted to accept the Qualifying Modification (the "Requisite Approvals");

f.     filed, on November 5, 2021, the *Supplemental Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Infrastructure Financing Authority, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PRIFA Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* [ECF No. 57] (the "Supplemental Rosen Decl."), which included:

     • the certification from the Oversight Board, pursuant to PROMESA Section 601(m)(1)(B), indicating that the (i) the voting requirements of Section 601 of PROMESA have been satisfied; (ii) the Qualifying Modification complies with the requirements set forth in PROMESA Section 104(i)(1); and (iii) any conditions (other than those identified in the Qualifying Modification as being non-waivable) on the effectiveness of the Qualifying

Modification have been satisfied (subject to satisfaction of conditions that will necessarily only be met upon closing and after the Court enters an order approving the Qualifying Modification pursuant to PROMESA Section 601(m)(1)(D)) or, in the Oversight Board's sole discretion, satisfaction of such conditions has been waived (the "601(m) Certification"); and

- a list of covered entities designated by the Oversight Board as subject to oversight pursuant to PROMESA.

g.    filed, on November 11, 2021, the *Second Supplemental Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Infrastructure Financing Authority, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PRIFA Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* [ECF No. 61] (the "Second Supplemental Rosen Decl.").[2]

This Court having:

i.    pursuant to the *Order Approving Procedures and Establishing Schedule for Approval of Qualifying Modification for the Puerto Rico Infrastructure Financing Authority*, dated October 12, 2021 [ECF No. 4] (the "Approval Procedures Order"), set November 8–10, 12, 15–18, and 22–23, 2021, at 9:30 a.m. (Atlantic Standard Time), as the date and time for the commencement of the hearing to consider approval of the Qualifying Modification (the "Approval Hearing");

ii.    reviewed the Solicitation Statement, the Approval Application, the Rosen Declaration, the Voting Certification, the 601(m) Certification, and all pleadings, exhibits, statements, responses, and comments regarding approval of the Qualifying Modification ("Approval"), including all objections, statements, and reservations of rights filed on the docket;

iii.    held the Approval Hearing;

iv.    heard the statements, arguments, and objections made by counsel in respect of Approval;

---

[2]    The exhibits attached to the Rosen Declaration, Supplemental Rosen Declaration, and Second Supplemental Rosen Declaration were consolidated in the *Notice of Submission of Financial Oversight and Management Board's, as Administrative Supervisor, Exhibit List in Connection with Hearing to Consider Approval of Qualifying Modification for the Puerto Rico Infrastructure Financing Authority Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* [ECF No. 64] (the "Exhibit Schedule").   Exhibit references in this Approval Order refer to the Exhibit Schedule.

v.      considered all oral representations, documents, filings, and evidence regarding Approval;

vi.     overruled the *Limited Objection of U.S. Bank as Trustee for PRIFA Bonds to the Application of the Puerto Rico Infrastructure Financing Authority ("PRIFA"), by and through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of Qualifying Modification for PRIFA Pursuant to Section 601(M)(1)(D) of PROMESA* [ECF No. 36] as resolved pursuant to certain revisions included in this Approval Order; and

vii.    taken judicial notice of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 (Docket Entry No. 19784 in Case No. 17-3283) (the "Commonwealth Plan"), all filings and proceedings in connection therewith, including the order entered confirming the Commonwealth Plan (the "Confirmation Order").

NOW, THEREFORE, the Court having found that adequate and appropriate notice of the Approval Hearing and the opportunity for any party to object to Approval has been given; and the record of the Title VI Case and the legal and factual bases set forth in the documents filed in support of Approval and presented at the Approval Hearing, including, but not limited to, the Solicitation Statement, the Approval Application, the Rosen Declaration, the Voting Certification, and the 601(m) Certification, establish just cause for the relief granted in this Approval Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## A.      Findings of Fact and Conclusions of Law.

1.      To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.

B.    **Jurisdiction.**

2.    The Court has subject matter jurisdiction over this matter pursuant to PROMESA Sections 106(a) and 601(m)(1)(D), and Local Rule 3.1.  The Court has original and exclusive jurisdiction to determine whether the Qualifying Modification complies with the applicable provisions of PROMESA Section 601 and should be approved.  The Court may properly retain competent jurisdiction over the matters arising out of PROMESA or arising from the Title VI Case.

C.    **PROMESA Title VI.**

3.    The creditor collective action provisions of Title VI of PROMESA provide a method for the Commonwealth of Puerto Rico (the "Commonwealth") and certain designated agencies and instrumentalities, including the Issuer, to effectuate a restructuring of their bond financings and other indebtedness based on the consent of a supermajority of those creditors voting in a particular class and can become binding on dissenting creditors in such class.  The Oversight Board serves as the "Administrative Supervisor" in Title VI pursuant to PROMESA Section 601(a)(1).

D.    **Eligibility to Be an Issuer Pursuant to Title VI.**

4.    An entity may be an "Issuer" pursuant to Title VI of PROMESA if such entity (a) is a covered territorial instrumentality (*see* PROMESA § 601(a)(2)), (b) is specifically authorized— as an "Authorized Territorial Instrumentality"—to be eligible to avail itself of the procedures pursuant to PROMESA Section 601 by the Oversight Board, as the Administrative Supervisor (*see* PROMESA § 601(e)), and (c) has issued or guaranteed at least one Bond[3] that is

---

[3]    A "Bond" pursuant to PROMESA includes a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money.  *See* PROMESA § 5(2).

Outstanding[4] (*see* PROMESA § 601(a)(8)).   On September 30, 2016, the Oversight Board designated PRIFA as a covered territorial instrumentality.  FOMB Ex. 9.  On August 27, 2021, the Oversight Board issued a resolution authorizing PRIFA to avail itself of Title VI and designating PRIFA as an Authorized Territorial Instrumentality pursuant to PROMESA Section 601(e).  *See* FOMB Ex. 3.  As evidenced by the bonds listed in Exhibit B to the Solicitation Statement—each of which qualifies as a Bond pursuant to PROMESA (as described further below)—PRIFA has issued at least one Bond.  In addition, as evidenced by the certification of disenfranchised Bonds delivered by PRIFA to the Calculation Agent (as defined below) pursuant to PROMESA Section 601(c), all of such Bonds listed in Exhibit B to the Solicitation Statement are Outstanding.  *See* FOMB Exs. 4 & 7.  Thus, PRIFA is an eligible Issuer pursuant to Title VI of PROMESA.

E.     **Proponents Validly Proposed the Modification.**

5.     Pursuant to PROMESA Section 601(i), a Modification[5] may be proposed to the Oversight Board, as Administrative Supervisor, by "one or more holders of the right to vote the Issuer's Outstanding Bonds."  PROMESA § 601(i).  PROMESA Section 601(j) provides that the holder of the right to vote on "Insured Bonds[6] shall be the monoline insurer insuring such Insured Bonds to the extent such insurer is granted the right to vote Insured Bonds for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable

---

[4]     A Bond is "Outstanding" pursuant to PROMESA as long as it is not disqualified pursuant to Section 601(b) because, for example, it is held by the Issuer or an entity controlled by the Issuer.  *See* PROMESA § 601(a)(10).

[5]     A "Modification" can be any modification, amendment, supplement or waiver affecting one or more series of Bonds, including those effected by way of exchange, repurchase, conversion or substitution.  *See* PROMESA § 601(a)(9).

[6]     The term ''Insured Bond'' pursuant to Title VI means a Bond subject to a financial guarantee or similar insurance contract, policy or surety issued by a monoline insurer.  PROMESA § 601(a)(7).

documents pursuant to which such Insured Bond was issued and insured." PROMESA § 601(j). Ambac Assurance Corporation ("Ambac"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), and Financial Guaranty Insurance Company ("FGIC" and, together with Ambac and Assured, the "Proponents") insure certain Outstanding Bonds and own outright certain of such Outstanding Bonds. Ambac, Assured, and FGIC have the right to vote on Outstanding Bonds that are Insured Bonds for the purpose of directing remedies or consenting to proposed amendments and modifications pursuant to the applicable insurance documents for such Bonds. *See* FOMB Exs. 10, 11, 12, and 13. Because the Proponents are holders of the right to vote PRIFA's Outstanding Bonds, each may individually or collectively properly propose, and possesses the right to vote with respect to, a Modification pursuant to PROMESA Section 601(i).

6.     On July 27, 2021, the Oversight Board, as representative of the Commonwealth of Puerto Rico, certain holders of Outstanding Bonds, Ambac, and FGIC (solely in their capacities as insurers of the Outstanding Bonds) entered into the *PRIFA Related Plan Support Agreement* (as may be amended or modified, the "PRIFA PSA"), which, among other things, sets forth the terms and conditions for a consensual modification of the Outstanding Bonds pursuant to Title VI of PROMESA. *See* FOMB Ex. 1.[7]

7.     The Outstanding Bonds are those Bonds issued by PRIFA and defined collectively as the "PRIFA Bonds" in the Qualifying Modification (each, an "Outstanding Bond"). Each Outstanding Bond constitutes a Bond in accordance with PROMESA Section 5(2) because it is

---

[7]     On July 27, 2021, Assured also signed a joinder to the PRIFA Related Plan Support Agreement.

either a bond, loan, letter of credit, other borrowing title, obligation of insurance or other financial indebtedness for borrowed money.

8.      The modification of the Outstanding Bonds on the terms and subject to the conditions set forth in the Qualifying Modification constitutes a "Modification" pursuant to PROMESA Section 601(a)(9) because it provides for the modification and cancellation, except as provided in the Qualifying Modification, of the Outstanding Bonds to be effected by way of contribution of consideration by PRIFA or the Commonwealth in the form of PRIFA Clawback CVIs, which will be distributed pursuant to the terms and provisions of Section 65.1 of the Commonwealth Plan and Section 34(f) of the Confirmation Order, and $193,500,000 in cash.  *See* FOMB Exs. 4 & 14.

9.      On August 13, 2021, Ambac and FGIC validly proposed to the Oversight Board, as Administrative Supervisor, a Modification of the Outstanding Bonds pursuant to Title VI in compliance with Section 601(i) of PROMESA (the "Modification").  *See* FOMB Ex. 2.

**F.      The Oversight Board, as Administrative Supervisor, Certified the Modification as a Qualifying Modification.**

10.     On August 27, 2021, the Oversight Board, as the Administrative Supervisor, certified the Modification pursuant to the "Voluntary Agreement Process" set forth in PROMESA Section 601(g)(2)(A), thereby establishing the Modification as a "Qualifying Modification" pursuant to PROMESA.  *See* FOMB Ex. 3.

11.     In certifying the Modification contemplated by the PRIFA PSA as a Qualifying Modification, the Oversight Board determined that (i) the transactions contemplated by the PRIFA PSA to be executed pursuant to the Qualifying Modification constitute a voluntary agreement (a "Voluntary Agreement") that provides for a sustainable level of debt for PRIFA, in accordance with PROMESA Section 104(i)(1)(B), because the PRIFA Bonds will be cancelled pursuant to the

Qualifying Modification; (ii) such Voluntary Agreement became effective because the holders of a majority in amount of Bond Claims (as defined in PROMESA) in respect of the Outstanding Bonds ("Outstanding Bond Claims") entered into the PRIFA PSA, in accordance with PROMESA Section 104(i)(2)(B); and (iii) the Modification satisfies PROMESA's requirement that each holder in the same Pool receive the same consideration, in accordance with Section 601(g)(1)(B). *See* FOMB Exs. 2 & 3.

G.      **Establishment of the Pool of Bonds.**

12.     Pursuant to Section 601(d) of PROMESA, the Oversight Board, as Administrative Supervisor, in consultation with the Issuer, is required to establish one or more classes of Bonds—called "Pools"—for purposes of voting on the Qualifying Modification based on certain prescribed classification requirements.  Each Outstanding Bond Claim is placed into one Pool established for the Qualifying Modification: a Pool for PRIFA Bond Claims.  *See* FOMB Ex. 4.  The Pool includes only claims against PRIFA arising from or relating to the PRIFA Bonds.  There are no other Outstanding Bond Claims other than those identified herein.  On September 24, 2021, the Oversight Board, as Administrative Supervisor, issued a resolution establishing, after consultation with PRIFA, the PRIFA Bond Claims Pool is the only Pool pursuant to PROMESA Section 601(d). *See* FOMB Ex. 5.

H.      **The Terms of the Qualifying Modification.**

13.     The terms of the Qualifying Modification are to be effected, subject to the terms and conditions set forth in the Qualifying Modification and herein, pursuant to which the Commonwealth will contribute $193.5 million in cash and certain contingent value instruments to be issued in accordance with the Commonwealth Plan and Qualifying Modification, to holders of Outstanding Bonds.  The parties to the Qualifying Modification have agreed to effectuate the

foregoing pursuant to the terms specifically set forth in the Qualifying Modification (the "Modification Terms"), summarized as follows:

    i.    **Distributions.**  Within ten (10) Business Days following the PRIFA Effective Date, and subject to the satisfaction of the PRIFA Distribution Conditions, the Disbursing Agent shall distribute, in full consideration, satisfaction, release and exchange of each holder's PRIFA Bond Claim, the PRIFA Rum Tax Recovery, Rum Tax Structuring Fees, and PSA Restriction Fees in accordance with the Qualifying Modification and the Commonwealth Plan.

    ii.    **Treatment of Ambac Insured PRIFA Bonds.**  To the extent that there are no outstanding payment defaults by Ambac with respect to Ambac Insured PRIFA Bonds up to and including the PRIFA Effective Date, the principal amount (or compounded amount in the case of capital appreciation bonds) of the Ambac Insured PRIFA Bonds shall be deemed accelerated and immediately due and payable as of the PRIFA Effective Date.

Ambac shall have the right at any time to cause all or any portion of the Ambac Insured PRIFA Bonds selected by Ambac to be paid the Ambac Acceleration Price as of the date of payment, regardless of which Ambac Non-Commutation Treatment applies to a particular holder of Ambac Insured PRIFA Bonds, and the holder of the Ambac Insured PRIFA Bonds and the trustee or fiscal agent (as applicable) shall be required to accept the same in satisfaction of Ambac's obligations under the applicable Ambac Insurance Policy with respect to such bonds, and, upon such payment, Ambac's obligations under the applicable Ambac Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the Ambac Insurance Policy or other documents related to the Ambac Insured PRIFA Bonds.

For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any Ambac Insurance Policy unless Ambac elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis with respect to any or all Ambac Insured PRIFA Bonds selected by Ambac.

    iii.    **Treatment of Assured Insured PRIFA Bonds.**  To the extent that there are no outstanding payment defaults by Assured with respect to Assured Insured PRIFA Bonds up to and including the PRIFA Effective Date, the payment of the principal of the Assured Insured PRIFA Bonds shall be accelerated from and after the PRIFA Effective Date, and such Assured Insured PRIFA Bonds shall be due and payable from and after the PRIFA Effective Date at the Assured Acceleration Price of one hundred percent (100%) of the principal amount thereof plus accrued interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.

iv.    **Treatment of FGIC Insured PRIFA Bonds.** The payment of the principal of the FGIC Insured PRIFA Bonds shall be accelerated as of the PRIFA Effective Date, and the FGIC Insured PRIFA Bonds shall be due and payable from and after the PRIFA Effective Date at an "acceleration price" of one hundred percent (100%) of the principal amount thereof, plus interest accrued thereon (or, in the case of capital appreciation bonds, the compounded amount thereof) to the date of payment; provided, however, that for the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made by FGIC under a FGIC Insurance Policy, unless FGIC elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis and FGIC has the express right to accelerate any such payment under the applicable FGIC Insurance Policy or the related agreements relating to the applicable FGIC Insured PRIFA Bonds.

14.    The effectiveness of the Qualifying Modification is subject to and conditioned upon the satisfaction of the conditions set forth in Section 10.1 of the Qualifying Modification, each of which is required to be certified by the Oversight Board, as Administrative Supervisor, as having been satisfied or waived or as being non-waivable, pursuant to PROMESA Section 601(m)(1)(B)(iii) (collectively, the "Modification Conditions" and, together with the Modification Terms, the "Modification Terms and Conditions" and, the date upon which the Modification Conditions occur, the "PRIFA Effective Date").

**I.    Commencement of the Title VI Case.**

15.    On the Title VI Application Date, the Oversight Board filed the Approval Application with the Court, pursuant to District of Puerto Rico Local Civil Rule 3.1.

**J.    Judicial Notice.**

16.    The Court takes judicial notice of all informative pleadings filed in the Title VI Case and the Commonwealth Title III Case, the Commonwealth Plan, the Confirmation Order, and all applicable proceedings and filings with respect thereto.

**K.    Notice.**

17.    As evidenced by the Solicitation Affidavit, the Hearing Affidavit, the Hearing Notice Certification, the Voting Certification, and the 601(m) Certification, due, adequate, and

sufficient notice of the Solicitation and the Approval Hearing, together with the deadlines for voting to accept or reject the Qualifying Modification as well as objecting to the Qualifying Modification has been given to, as applicable:  (a) all known holders of, or entities with the right to vote, Outstanding Bonds; (b) the indenture trustees for the Outstanding Bonds; and (c) parties that requested notice in the Title VI Case.  As evidenced by the Hearing Notice Certification, the Oversight Board, through the Information Agent, caused the Hearing Notice to be served on all parties in interest with respect to PRIFA, including all parties eligible to vote in the PRIFA Bond Claims pool.  Accordingly, no other or further notice is or shall be required.

**L.**   **Solicitation.**

18.    PRIFA, through the Information Agent, solicited votes for acceptance or rejection of the Qualifying Modification from Eligible Voters in compliance with PROMESA Sections 601(f) and (h) and all other applicable rules, laws, and regulations.  All procedures used to distribute the Solicitation Package, including the Ballots, to holders of Outstanding Bond Claims eligible to vote and/or make elections (each, an "Eligible Voter"), as set forth in the Solicitation Affidavit and the Voting Certification, were timely, adequate and sufficient and in accordance with PROMESA, applicable securities laws, and all other applicable rules, laws, and regulations.  In particular, and without limitation, as evidenced by the Solicitation Affidavit and the Voting Certification and as detailed below, (a) the Solicitation Packages were transmitted to all Eligible Voters; (b) Eligible Voters were provided sufficient and reasonable information, time, and notice to submit Ballots; and (c) votes were tabulated fairly, in good faith, and as set forth in the Solicitation Package and the Voting Certification.

    i.    **Voting Record Date.**   Holders of record of Outstanding Bonds that were Outstanding were determined as of October 5, 2021 (the "Voting Record Date")— the date specified in the Solicitation Package for such purpose.

ii.     **Transmission of Solicitation Packages.**  As described in the Solicitation Affidavit, the Information Agent distributed Solicitation Packages (a) to the Monolines by electronic mail on October 5, 2021, and (b) to beneficial owners of the Outstanding Bonds by overnight or next business day delivery to the banks, brokers, dealers, agents, nominees (or their agents) that hold the Outstanding Bonds "in street name" at the Depository Trust Company ("DTC") on behalf of such beneficial owners on October 12, 2021.  Such transmission of the Solicitation Packages, as evidenced by the Solicitation Affidavit, was timely, adequate, and sufficient under the circumstances, and no further transmission of the Solicitation Packages was required.

iii.    **Voting Deadline.**  Establishment and notice of the deadline by which Ballots were required to be received by Prime Clerk, LLC (the "Calculation Agent") to be counted for or against the Qualifying Modification (the "Voting Deadline") was appropriate and reasonable under the circumstances.  The period during which votes were solicited on the Qualifying Modification, as evidenced by the Solicitation Affidavit and the Voting Certification, was a reasonable period of time for Eligible Voters to make an informed decision to accept or reject the Qualifying Modification.

**M.      Voting Report.**

19.     Prior to the Approval Hearing, the Voting Certification was filed with the Court, certifying the method and results of the Ballots tabulated.  As of the Voting Deadline, (i) holders of the right to vote at least two-thirds (2/3) of the Outstanding Principal amount of the Outstanding Bonds in the Pool that have voted to accept or reject the Qualifying Modification, and (ii) holders of the right to vote not less than a majority of the aggregate Outstanding Principal amount of all the Outstanding Bonds in the Pool, have voted to accept the Qualifying Modification.  As set forth in the Voting Certification, the procedures used to tabulate the Ballots were fair and reasonable.  As evidenced by the Voting Certification, votes to accept or reject the Qualifying Modification have been solicited and tabulated fairly and in a manner consistent with PROMESA and each of the Pools of Outstanding Bonds voted to accept the Qualifying Modification.

**N.      Burden of Proof.**

20.     The Oversight Board, as Administrative Supervisor for PRIFA and applicant for approval of the Qualifying Modification, has met its burden of proving the elements of Section

601 of PROMESA by a preponderance of the evidence, the applicable evidentiary standard for Approval.

O.      **Compliance with the Requirements of PROMESA Section 601.**

21.     The Qualifying Modification complies with all applicable provisions of PROMESA Section 601.

     i.      **Section 601(d)—Compliance with Applicable PROMESA Pooling Requirements.**  On September 24, 2021, the Oversight Board, as the Administrative Supervisor, established one Pool pursuant to PROMESA Section 601(d).  *See* FOMB Ex. 5.  The Qualifying Modification classifies each Outstanding Bond into one Pool based on the requirements of PROMESA Section 601(d)(3), as set forth in Exhibit A to the Solicitation Statement.  No Outstanding Bonds that have identical rights in security or priority have been placed into separate Pools, and no Outstanding Bonds are entitled to a separate Pool pursuant to PROMESA.  The pooling of the Outstanding Bonds set forth in Exhibit A to the Solicitation Statement complies with the pooling requirements pursuant to PROMESA.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(d).

    ii.      **Section 601(e)—PRIFA is An Authorized Territorial Instrumentality.**  On August 27, 2021, the Oversight Board, as Administrative Supervisor, authorized PRIFA pursuant to Section 601(e) of PROMESA to be eligible to avail itself of the procedures pursuant to Section 601 of PROMESA, thereby establishing PRIFA as an Authorized Territorial Instrumentality.  *See* FOMB Ex. 3.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(e).

   iii.      **Section 601(f)—Compliance with the Information Delivery Requirement.**  Prior to Solicitation, PRIFA delivered to the Oversight Board, as Administrative Supervisor, the Calculation Agent, and the Information Agent a copy of the Solicitation Package, which includes, among other things, (a) sufficient descriptions of (i) PRIFA's economic and financial circumstances, (ii) PRIFA's existing debts and (iii) the impact of the proposed Qualifying Modification on the Commonwealth's and PRIFA's public debt; (b) a description of any other modifications being sought by PRIFA affecting any other Pools; and (c) sufficient information as required pursuant to applicable securities laws.  On September 28, 2021, the Oversight Board acknowledged receipt of the Solicitation Package.  *See* FOMB Ex. 6.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(f) and the Solicitation Package provides the information required in accordance with applicable securities laws pursuant to PROMESA Section 601(f)(4).

   iv.      **Section 601(g)—The Modification was Certified by the Oversight Board as a Qualifying Modification.**  On August 27, 2021, the Oversight Board, as

Administrative Supervisor, certified the Modification as a Qualifying Modification pursuant to PROMESA Section 601(g)(2) based on (a) its certification of the transactions contemplated in the PRIFA PSA as a Voluntary Agreement pursuant to PROMESA Section 104(i)(1); (b) its finding that the Voluntary Agreement became effective pursuant to PROMESA Section 104(i)(2); and (c) its finding that the Modification satisfies the same consideration requirement pursuant to PROMESA Section 601(g)(1)(B).  *See* FOMB Ex. 3.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(g).

v.    **Section 601(h)—The Qualifying Modification has Been Properly Solicited.** PRIFA, through the Information Agent, solicited votes for acceptance or rejection of the Qualifying Modification in compliance with PROMESA, applicable securities laws, and all other applicable rules, laws, and regulations.   The Information Agent provided notice of the Solicitation (a) to the Monolines by electronic mail on October 5, 2021, and (b) to beneficial owners of the Outstanding Bonds by overnight or next business day delivery to the banks, brokers, dealers, agents, nominees (or their agents) that hold the Outstanding Bonds "in street name" at DTC on behalf of such beneficial owners on October 12, 2021.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(h).

vi.   **Section 601(i)—Ambac and FGIC are Eligible to Propose the Qualifying Modification.**  Ambac and FGIC, as holders of the right to vote one or more of the Outstanding Bonds, are eligible to propose the Qualifying Modification in accordance with PROMESA Section 601(i).  *See* FOMB Exs. 2, 10, 11, and 12. The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(i).

vii.  **Section 601(j)—The Voting Requirements Have Been Satisfied Prior to the Approval Hearing.**  As evidenced by the Voting Certification and the 601(m) Certification (a) Eligible Voters holding over 50% of the Outstanding Principal amount of Outstanding Bonds in the Pool voted to accept the Qualifying Modification; and (b) Eligible Voters holding over 66 2/3% of the Outstanding Principal amount of Outstanding Bonds in the Pool that voted in the Solicitation voted to accept the Qualifying Modification.   The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(j).

viii. **Section 601(k)—Prime Clerk, LLC has been Properly Designated as the Calculation Agent.**  Prime Clerk, LLC has been properly appointed Calculation Agent, which appointment was confirmed to be acceptable to the Oversight Board, as Administrative Supervisor.  *See* FOMB Ex. 5.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(k).

ix.   **Section 601(l)—Prime Clerk, LLC has been Properly Designated as the Information Agent.**  Prime Clerk, LLC has been properly appointed Information Agent, which appointment was confirmed to be acceptable to the Oversight Board, as Administrative Supervisor.  *See* FOMB Ex. 5.  The Qualifying Modification therefore satisfies the requirements of PROMESA Section 601(l).

x. **Section 601(m)—The Qualifying Modification Satisfies the Requirements Necessary to Become Binding and Effective.** Pursuant to PROMESA Section 601(m), (a) the voting requirements of Section 601 of PROMESA have been satisfied; (b) the Oversight Board, as Administrative Supervisor, has certified that (i) the Requisite Approvals have been obtained, (ii) the Qualifying Modification complies with the requirements set forth in PROMESA Section 104(i)(1), and (iii) any conditions to the effectiveness of the Qualifying Modification have been satisfied (subject to satisfaction of conditions that will necessarily only be met upon closing and after the Court enters an order approving the Qualifying Modification pursuant to PROMESA Section 601(m)(1)(D)) or, in the Oversight Board's sole discretion, satisfaction of such conditions (other than those identified in the Qualifying Modification as being non-waivable) has been waived; and (c) pursuant to this Approval Order, the Qualifying Modification is approved. Section 601(m)(1)(C) of PROMESA is not applicable because there are no Outstanding Bond Claims in respect of Outstanding Bonds secured by a lien on property. The Qualifying Modification therefore satisfies the requirements of Section 601(m) of PROMESA.

**P.  Modification Terms and Conditions.**

22. The Qualifying Modification is the result of extensive arms' length negotiations among the Oversight Board and the insurers (and holders, as applicable) of Outstanding Bonds—Ambac and FGIC. The Modification Terms and Conditions reflect compromises and settlements among the Oversight Board, the insurers and certain holders of Outstanding Bonds who joined the PRIFA PSA. Accordingly, based upon the record of the Title VI Case, the representations and the evidence proffered, adduced, and presented at the Approval Hearing, the Court finds that (i) the Modification Terms and Conditions are essential means of implementing the Qualifying Modification, (ii) the Modification Terms are integral elements of the Qualifying Modification, and (iii) the Qualifying Modification is expressly conditioned upon the satisfaction of the Modification Conditions.

**Q.  The Releases, Exculpations, and Injunctions Pursuant to the Qualifying Modification.**

23. The Qualifying Modification provides for releases, discharge, exculpation provisions, and injunctions set forth in Article XV therein (the "Releases") that are integral and

critical parts of the Qualifying Modification and the compromises and settlements implemented pursuant thereto.  The approval of such releases is a condition to the occurrence of the PRIFA Effective Date, and all Released Parties have relied on the efficacy and conclusive effects of such releases and injunctions and on the Title VI Court's retention of jurisdiction to enforce such releases and injunctions when making concessions pursuant to the Qualifying Modification and by agreeing to, accepting, and supporting the settlement and treatment of their respective Claims, Causes of Action, and other rights pursuant to the Qualifying Modification.  Furthermore, such compromises and settlements recognize the significant contributions by parties, including the holders of Outstanding Bonds, to achieve an efficient and consensual modification of PRIFA Bonds, and are made in exchange for consideration, including the release of certain Claims and Causes of Action.  The injunction provisions set forth in the Releases are narrowly tailored to give necessary effect to the release and exculpation provisions set forth in the Releases. The Releases are in addition to any claims barred by operation of law pursuant to PROMESA Section 601(m). Accordingly, such provisions are justified and warranted based upon the circumstances of the Title VI Case and the consideration being provided by all Released Parties in connection with the Qualifying Modification.

24.     Furthermore, Section 15.8 of the Qualifying Modification provides for the exculpation of the Government Parties and the Monolines for, among other things, any acts taken consistent with the Qualifying Modification or in connection with the formulation, preparation, dissemination, implementation, acceptance, approval of the Qualifying Modification and settlements contained therein.  Such exculpation is narrowly tailored to the exculpated parties' efforts related to the Qualifying Modification, which parties played a key role in the negotiation of the Qualifying Modification and settlements enabling the Qualifying Modification.

25.      Accordingly, the Releases are:  (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the claims released by such Released Parties; (d) in the best interests of PRIFA and the Commonwealth; (e) fair, equitable, and reasonable; (f) appropriately narrow in scope given that they expressly apply to each holder of an Outstanding Bond only in its capacity as such, and do not release claims unrelated to the Qualifying Modification, Title VI Case, or an Outstanding Bond Claim; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such Releases.

**R.      Validity of Clawback CVIs**

26.      As provided in the order confirming the Commonwealth Plan (the "Confirmation Order") and related findings of fact and conclusions of law, at the time of issuance and delivery of the Clawback CVIs, the Reorganized Commonwealth will cause to be stamped or written on each of the Clawback CVIs a legend substantially as follows:

> DETERMINED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO PURSUANT TO 11 U.S.C. §§ 944(b) AND 1123 TO BE VALID, LEGALLY BINDING, AND ENFORCEABLE PURSUANT TO THE JUDGMENT AND CONFIRMATION ORDER, ENTERED ON THE 18TH DAY OF JANUARY, 2022.

27.      As provided in the Confirmation Order and related findings of fact and conclusions of law, pursuant to PROMESA, including Section 4 thereof, as well as sections 944 and 1123 of the Bankruptcy Code, and in accordance with the Confirmation Order and the Commonwealth Plan, the Clawback CVIs and the Rum Tax CVIs, and the covenants by the Commonwealth, for the benefit of the holders of the Clawback CVIs and the Rum Tax CVIs as provided in the CVI Legislation, the CVI Indenture or the Confirmation Order, as applicable, constitute valid, binding,

legal and enforceable obligations of the Commonwealth, pursuant to Puerto Rico, New York, and federal law.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

### A.    Findings of Fact and Conclusions of Law.

28.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B.    Notice of the Approval Hearing.

29.    Notice of the Approval Hearing was adequate and sufficient under the circumstances, and all parties required to be given notice of the Approval Hearing and the deadlines for voting to accept or reject the Qualifying Modification as well as objecting to the Qualifying Modification were given due, proper, timely, and adequate notice in accordance with the Approval Procedures Order and in compliance with applicable law, and such parties had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

### C.    Approval of the Qualifying Modification.

30.    The Qualifying Modification, including the Modification Terms, is hereby approved and binding in its entirety pursuant to PROMESA Sections 601(m)(1)(D), 601(n), and 602.  To the extent that any objections or reservations of rights to Approval of the Qualifying Modification have not been resolved, withdrawn, waived, or settled prior to entry of this Approval Order or otherwise resolved by the relief granted herein or as stated by the Oversight Board, as

Administrative Supervisor, on the record of the Approval Hearing, all such objections are overruled on the merits.

## D.   **Binding Effect.**

31.     The entry of this Approval Order is deemed to satisfy Section 601(m)(1)(D) of PROMESA.  Upon the entry of this Approval Order, and subject to the occurrence of the PRIFA Effective Date, the Qualifying Modification, including the Modification Terms, shall be conclusive, valid, and binding in accordance with Section 601(m)(2) of PROMESA, and is not intended to be subject to collateral attack in any other forum, and may only be challenged in accordance with applicable rules in this Court and appealed as provided in PROMESA and other applicable federal laws, rules, and jurisprudence, by (i) PRIFA, (ii) the Commonwealth and its instrumentalities, (iii) each Entity asserting claims or other rights against PRIFA, including each holder of a PRIFA Bond Claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of the PRIFA Bonds or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such Entity are impaired pursuant to the Qualifying Modification and, if impaired, whether or not such Entity accepted the Qualifying Modification, and (iv) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.  No person or entity shall enact, adopt, or implement any law, rule, regulation, or policy that impedes, financially or otherwise, consummation and implementation of the transactions contemplated by the Commonwealth Plan or the Qualifying Modification, as applicable.

**E.**     **Authorizations to Consummate the Qualifying Modification.**

32.     PRIFA, the Commonwealth, AAFAF, the indenture trustee(s) for the Clawback CVIs are hereby authorized and directed to enter into all transactions and take such other actions as may be necessary or appropriate to consummate the Qualifying Modification in accordance with the Modification Terms, subject to the terms and conditions set forth herein, and subject to the conditions precedent to the PRIFA Effective Date and the PRIFA Distribution Conditions.

33.     In consummating the Qualifying Modification, PRIFA, AAFAF, and the Commonwealth, as applicable, shall be permitted and are directed to (a) execute and deliver appropriate agreements or other documents containing terms that are consistent with the Modification Terms that satisfy the requirements of applicable state and territory law and such other terms to which the applicable entities may agree; and (b) execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the Modification Terms and having such other terms to which the applicable entities may agree.  Without limiting the foregoing, PRIFA, AAFAF, and the Commonwealth, as applicable, shall be permitted, and shall use their respective reasonable best efforts, to take all other actions that the Oversight Board, as Administrative Supervisor, determines to be necessary or appropriate in connection with such transactions.

**F.**     **Payment of PSA Restriction Fees**

34.     Subject to the terms and conditions herein, the PSA Restriction Fees set forth in Section 3.2 of the Qualifying Modification are approved, and shall be paid in cash on the PRIFA Effective Date in accordance with the terms and conditions set forth therein; provided, however,

that, in all circumstances, the sum of the PSA Restriction Fees shall not exceed Ten Million Dollars ($10,000,000.00).

G.     **Delivery of Distributions.**

35.     Except as otherwise provided herein, in the Confirmation Order, or in the Qualifying Modification, distributions and deliveries to holders of Claims shall be made through The Depository Trust Company or at the address of the holder of the PRIFA Bond Claim; provided, however, that, except as otherwise provided herein, the Disbursing Agent may make distributions of the PSA Restriction Fees and the Rum Tax Structuring Fees in Cash to a party entitled thereto in a manner mutually agreed upon between such party and the Disbursing Agent. The Issuer, its agents and servicers, and the Disbursing Agent shall have no obligation to recognize any transfer of PRIFA Bond Claims after the Ballot Date; provided, however, the foregoing shall not apply to any publicly held securities that will receive a distribution pursuant to the Qualifying Modification through The Depository Trust Company; provided, further, that the PRIFA Clawback CVIs will be transferable and recognized if made in accordance with the terms and conditions of the Clawback CVI Indenture, respectively. Each trustee or fiscal agent may conclusively rely upon the distribution instructions received from the Issuer or its agents with respect to the delivery of distributions in accordance with the terms and provisions of the Qualifying Modification, including the contra-CUSIP positions and escrow positions established by the Issuer or its agents with The Depository Trust Company, and each trustee or fiscal agent shall close and terminate the original CUSIPs after making distributions in accordance with the terms and provisions of the Qualifying Modification and shall have no further distribution obligations thereunder. No trustee or fiscal agent shall be required to post any bond or surety or other security for the performance of its duties, unless otherwise ordered or directed by the Court. Each trustee or fiscal agent shall only be required to make the distributions and deliveries described in decretal paragraphs 35 and 36 and

the Qualifying Modification and in accordance with the terms of this Approval Order, the Qualifying Modification and such other governing document, and shall have no liability for actions reasonably taken in accordance with the terms of this Approval Order, the Qualifying Modification and such other governing document, or in reasonable reliance upon information provided to such trustee or fiscal agent by the Issuer or its agents in accordance with the terms of this Approval Order, the Qualifying Modification or in connection with distributions to be made hereunder or thereunder, except for liabilities resulting from the gross negligence or willful misconduct of such trustee or fiscal agent.

36.     <u>Delivery of Distributions with Respect to Monolines</u>.  Notwithstanding any other provision of the Qualifying Modification or of this Approval Order, (i) pursuant to Article V of the Qualifying Modification, the Disbursing Agent shall disburse the applicable Monoline's share of the PRIFA Rum Tax Recovery to such Monoline in a manner mutually agreed upon between the Disbursing Agent and such Monoline; (ii) on or prior to the PRIFA Effective Date, the Disbursing Agent and PRIFA shall disclose to Assured the Assured Acceleration Price to be paid with respect to the Assured Insured PRIFA Bonds, and, at a time acceptable to Assured within ten (10) Business Days of the PRIFA Effective Date, Assured shall, or shall cause the applicable custodian of custody receipts evidencing the beneficial ownership interest of the holders thereof in such Assured Insured PRIFA Bonds and the related Assured Insurance Policies to draw on the applicable Assured Insurance Policies in order to pay the applicable Assured Acceleration Price to the beneficial holders of such Assured Insured PRIFA Bonds in accordance with Section 6.2 of the Qualifying Modification; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, Assured shall not in any circumstance be required to pay itself an Assured Acceleration Price with respect to any Assured Insured PRIFA Bonds owned by Assured, by subrogation or otherwise; and (iii) Assured

will be deemed to have collapsed the existing custodial arrangement without any further action on the part of the existing custodian, provided, however, that the existing custodian is also hereby authorized and ordered to take any further actions that may be necessary to confirm the collapse of the existing custodial arrangement as provided herein.

H.    **Cancellation of PRIFA Bonds and Other Documents.**

37.    Except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Qualifying Modification, (b) for purposes of evidencing a right to distribution pursuant to the Qualifying Modification, or (c) as specifically provided otherwise in the Qualifying Modification, on the PRIFA Effective Date, the PRIFA Bonds and all instruments and documents related thereto will be deemed automatically cancelled, terminated and of no further force or effect against the Issuer without any further act or action pursuant to any applicable agreement, law, regulation, order or rule, with the Issuer having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to the Issuer, as applicable, pursuant to the PRIFA Bonds and all instruments and documents related thereto shall be discharged; provided, however, that, notwithstanding anything contained herein or the Qualifying Modification to the contrary, the PRIFA Bonds and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Qualifying Modification and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of PRIFA Bond Claims to receive distributions in accordance with the terms and provisions of the Qualifying Modification, (iii) to allow any trustee, fiscal agent, agent, contract administrator or similar entity pursuant to all instruments and documents related thereto, to perform necessary functions, including making distributions, in accordance with the Qualifying Modification and to have the benefit of all the rights and protections and other provisions of such instruments and documents,

as applicable, and all other related agreements, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than the Issuer, or (v) as may be necessary to preserve any claims pursuant to the respective insurance policies and related documents issued by a Monoline (other than Assured), and the Oversight Board shall request that PRIFA use its reasonable efforts to (1) maintain the existing CUSIP numbers for the Ambac Insured PRIFA Bonds and the FGIC Insured PRIFA Bonds and (2) take such other reasonable steps as may be necessary to preserve and effectuate such PRIFA Bond Claims.  Notwithstanding the foregoing, and except as otherwise expressly provided in the Qualifying Modification, such bonds or bond documents that remain outstanding shall not form the basis for the assertion of any Claim against the Issuer.  For the avoidance of doubt, as of ten (10) Business Days following the PRIFA Effective Date, any trustee, fiscal agent, agent, contract administrator or similar entity pursuant to all instruments and documents related to the PRIFA Bonds deposited into the Ambac Trust or the FGIC Trust shall have no further duties or responsibilities with respect to such PRIFA Bonds.

## I.    Payment of Trustee Fees and Expenses

38.    The distributions to be made pursuant to the Qualifying Modification and this Approval Order are intended to be inclusive of any and all trustee or fiscal agent fees and expenses which may be allegedly due and owing by the Issuer with respect to amounts discharged pursuant to the Qualifying Modification and this Approval Order. The Qualifying Modification and this Approval Order do not, nor shall they be construed to, limit the rights of each trustee or fiscal agent to payment of such amounts (a) from the distributions to be made hereunder, or (b) pursuant to a contractual fee agreement entered into by the Issuer, or on their behalf, during the period from and after the Commonwealth Petition Date, including, without limitation, that certain *Settlement Agreement and Invoice Instructions*, dated as of December 21, 2018, by and between, among others, AAFAF, U.S. Bank Trust National Association, and U.S. Bank National Association

(collectively, the "USB Entities"); provided, however, that after the later of (i) the Commonwealth Plan Effective Date and (ii) the PRIFA Effective Date, in the event that, following application of fees and expenses in accordance with the terms and provisions of the Settlement Agreement, the USB Entities retain any monies deposited by PRIFA, pursuant to the terms thereof, the USB Entities shall remit such excess funds to PRIFA, or such other Entity as may be designated by PRIFA within fifteen (15) Business Days following the Commonwealth Plan Effective Date or the PRIFA Effective Date, as applicable, by wire transfer of immediately available funds.

**J.   Releases, Exculpations, and Injunctions.**

39.    The Releases set forth in Article XV of the Qualifying Modification are hereby approved and authorized in their entirety.  Such provisions are (a) integral parts of the Qualifying Modification; (b) fair, equitable, and reasonable; (c) given for valuable consideration; and (d) in the best interest of PRIFA, the Commonwealth, and all parties in interest, and such provisions are incorporated in this Approval Order as if set forth in full herein and are approved and shall be effective and binding on all persons and entities, to the extent provided pursuant to the Releases.

40.    On the PRIFA Effective Date, and for good and valuable consideration,

(i)     each of the Issuer, the Monolines, and each of their respective Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge U.S. Bank Trust National Association, as trustee for the PRIFA Bonds (the "PRIFA Trustee"), from any and all Claims or Causes of Action that the Issuer and the Monolines, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against the PRIFA Trustee that are based upon, relate to, arise out of or in connection with, in whole or in part, any act, omission, transaction, event, or other circumstance relating to the PRIFA Bonds, including, but not limited to, the Title VI Cases and the Qualifying Modification; and

(ii)    the PRIFA Trustee and each of its respective Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge each of the Issuer and the Monolines from any and all Claims or Causes of Action that the PRIFA Trustee, or anyone claiming through it, on its behalf or for its benefit, have or may have or claim to have, now or in the future, against any of the Issuer and the Monolines that are based upon,

relate to, arise out of or in connection with, in whole or in part, any act, omission, transaction, event, or other circumstance relating to the PRIFA Bonds, including, but not limited to, the Title VI Cases and the Qualifying Modification.

provided, however, that the foregoing releases are not intended to include, nor shall they have the effect of including, Claims or Causes of Action unrelated to the Issuer and the PRIFA Bonds, or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; provided, further, that the foregoing releases are not intended to release, nor shall they have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order, the Approval Order, the Commonwealth Plan, and the Qualifying Modification.

**K.     Reservation of Rights.**

41.     The Qualifying Modification shall have no force or effect unless and until the PRIFA Effective Date occurs.  Prior to the PRIFA Effective Date, none of the filing of the Qualifying Modification, any statement or provision contained in the Qualifying Modification, or action taken by any Monoline, PRIFA, AAFAF, the Commonwealth, or the Oversight Board with respect to the Qualifying Modification shall be, or shall be deemed to be, an admission or waiver of any rights of any Monoline, PRIFA, AAFAF, the Commonwealth, or the Oversight Board or any other party with respect to any Outstanding Bond or any other matter.

**L.     Nonseverability of Qualifying Modification Provisions upon Approval.**

42.     This Approval Order constitutes a judicial determination that each term and provision of the Qualifying Modification, and securities issued pursuant thereto, is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Qualifying Modification and may not be deleted or modified without the Oversight Board's consent, subject to any applicable consultation and approval rights and conditions as provided in the Qualifying Modification; and (c) nonseverable and mutually dependent.

**M.**   <u>**Compliance with Tax Requirements**</u>.

43.    Any party issuing any instrument or making any distribution pursuant to the Qualifying Modification shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or tax authority, and all distributions pursuant to the Qualifying Modification shall be subject to any such withholding or reporting requirements; <u>provided</u>, <u>however</u>, that payments or redemptions made with respect to the Clawback CVIs shall not be subject to any Commonwealth tax or withholding obligation imposed by the Commonwealth now or in the future regardless of whether such payments or redemptions with respect to the Clawback CVIs may be exempt from the payment of federal or state taxes, including, without limitation, the twenty-nine (29%) Puerto Rico income tax withholding at source that may otherwise be applicable to such payments or redemptions.  Except as provided above, each holder (including a holder other than a Monoline) of a PRIFA Bond Claim that is to receive a distribution pursuant to the Qualifying Modification shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Qualifying Modification has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution pursuant to the Qualifying Modification fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.  The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder (including a holder other than a Monoline).

**N.**     **Fiscal Plan.**

44.     As provided in the Confirmation Order, the Oversight Board shall provide that the Fiscal Plan in effect on the Commonwealth Plan Effective Date, and any post-Commonwealth Plan Effective Date Fiscal Plan certified by the Oversight Board include provisions which would require the certified budget to provide for the payment in each FY of, to the extent that the Outperformance Condition is satisfied in the prior FY, any amounts due and owing on the Clawback CVIs in accordance with the terms of the Clawback CVI Indenture.

**O.**     **Retention of Jurisdiction.**

45.     To the fullest extent permitted by law, and notwithstanding the entry of this Approval Order or the occurrence of the PRIFA Effective Date, this Court shall retain exclusive jurisdiction or, solely to the extent the Title VI Case has been closed in accordance with the terms and provisions of PROMESA, the United States District Court for the District of Puerto Rico is hereby designated exclusive jurisdiction, over any matter arising pursuant to the Qualifying Modification or this Approval Order, and enforcement of the terms of the Qualifying Modification and the obligations contemplated pursuant thereto.

**P.**     **Final Order.**

46.     This Approval Order is a final order and is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) the Commonwealth, (2) PRIFA, (3) AAFAF, (4) each person or entity asserting claims or other rights against the Commonwealth, PRIFA, or any of their respective instrumentalities or agencies, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of the PRIFA Bonds, or with respect to any trustee, collateral agent, indenture trustee, fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are

impaired pursuant to the Qualifying Modification and, if impaired, whether or not such person or entity accepted the Qualifying Modification, and (5) each of the foregoing's respective heirs, successors, assigns, trusted, executors, officers, directors, agents, representatives, attorneys, beneficiaries or guardians.

47.     The period in which an appeal of this Approval Order must be filed shall commence upon entry hereof.

**Q.     Conflicts Among Order and Qualifying Modification; Non-Impairment of Confirmation Order.**

48.     The provisions of the Qualifying Modification and this Approval Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that, in the event of any irreconcilable inconsistency between the Qualifying Modification and this Approval Order, the documents shall control in the following order of priority: (i) this Approval Order, (ii) the Confirmation Order, (iii) the Commonwealth Plan, and (iv) the Qualifying Modification; and, provided, further, that nothing contained herein is intended, nor shall be construed, to modify the economic terms of the Qualifying Modification.  Nothing in this Approval Order shall be construed as intending to impair or impairing the provisions of any order entered by this Court confirming the Commonwealth Plan.

**R.     Waiver of Stay.**

49.     Notwithstanding Rule 62 of the Federal Rules of Civil Procedure or otherwise, this Approval Order shall be effective and enforceable immediately upon entry.  PRIFA and the

Commonwealth are authorized and directed to consummate the Qualifying Modification at any time after the entry of this Approval Order.

SO ORDERED.

Dated:  January 20, 2022

/s/ Laura Taylor Swain
Laura Taylor Swain
United States District Judge